## HILLIARD *v.* GOOLD.

Where tariffs of fares of freight and passengers upon a railroad are established and posted up by the president of the corporation, and the fares taken upon such tariffs are received and appropriated by the corporation without objection, the legal presumption is, that the president acted by the authority of the corporation in thus establishing and posting such tariffs.

A uniform discrimination in the tariff of fares for passengers of five cents in favor of those who purchase tickets before entering the cars, over those who pay after taking their seats, is reasonable and legal, and a passenger who, having neglected to procure a ticket, shall refuse to pay the additional five cents, may lawfully be ejected from the cars.

The statute requiring conductors on railroads in this State to remove from the cars passengers refusing to pay the established fares, was intended to apply to all persons properly acting as conductors, without regard to the formal regularity of their appointment, or the source from whence they derive compensation for their services.

Whenever the justification of an act, alleged to be wrongful and injurious, is founded on the exercise of authority, whether that authority be incident to the official character and duty of the party exercising it, or arise from the misconduct of the opposite party and the necessities of the case, the question of the excess of such authority is to be determined by the jury upon the evidence submitted for their consideration, and not by the court.

TRESPASS.  The declaration alleged that the defendant, on the 28th of January, 1854, assaulted and beat the plaintiff, and forcibly removed him from a car in a train belonging to the Grand Trunk railway, while on his passage from Northumberland to North Stratford, in this county, and left him on the track in the night time.

Plea, the general issue, with a statement that the defendant was conductor of a train of cars on the Atlantic and St. Lawrence railroad, and the plaintiff a passenger from Northumberland to North Stratford ; that he demanded of the plaintiff the lawful and established fare, which the plaintiff refused, and thereupon for that cause the defendant, gently, and without unnecessary force, removed the plaintiff from the car at a suitable time and place, and under proper and suitable circumstances.

The following facts appeared on trial : On the 28th of Janu-

ary, 1854, about seven o'clock in the evening, the plaintiff took his place in a passenger train on the Atlantic and St. Lawrence railroad, at the Northumberland station, to go as a passenger from that station to the station at North Stratford, on his way to Colebrook, where he resided. The train was on its passage from Portland to Island Pond. Soon after the train started the defendant, being in charge of the train as conductor, called on the plaintiff and other passengers for their tickets. The plaintiff said he had no ticket, and the defendant then asked him for his fare. The plaintiff offered thirty-five cents as the fare from Northumberland to North Stratford. The defendant told him the fare was forty cents ; the plaintiff refused to pay more than thirty-five. The defendant soon afterwards demanded of the plaintiff the same fare, and told him that unless he paid it he should be obliged to remove him from the car. The plaintiff still refused to pay more than thirty-five cents. The defendant then caused the train to stop, and with the assistance of the engineer forcibly removed the plaintiff from the car, and went on, leaving the plaintiff on the track.

The distance is about ten miles from the Northumberland to the North Stratford station, and about half way between them is an intermediate station at Stratford Hollow. The plaintiff was put out at a spot about two miles from the Northumberland station. The track at that spot is on an embankment from two or three to four or five feet high, and the track continues on an embankment for from twenty to forty rods, till it strikes a steep hill, and then for about half a mile it is in a cut varying in depth, being at the deepest forty or fifty feet. Fifty or sixty rods beyond the spot where the plaintiff was left, the railroad is crossed by the highway by a bridge over a cut, at that place about ten feet deep. Between that bridge and the place where the plaintiff was left, and about fifteen rods from that bridge, is another bridge across the railroad, for the accommodation of a private way belonging to a farm. About fifteen rods beyond the first named bridge, towards North Stratford, the railroad passes between a house and barn, and there is a bridge across the road

between them. There are two other dwelling-houses on the highway before mentioned, near the bridge, but no house or other building was visible from the spot where the plaintiff was left. There is no road or path leading to the railroad at that spot, nor any public way to the railroad at either of these bridges, but at the bridge in the public highway people sometimes walk up and down on foot. The railroad from the Northumberland station to the spot where the plaintiff was put out is through low, swampy land and wood, till at or near that spot, and then it runs through open fields and pastures for some distance.

When the plaintiff took his place in the cars at Northumberland, daylight was gone, the night was very cold, with starlight, but no moon. The ground was covered with snow, but the snow had been removed from the track by the snow-plow, so that a man might walk on the track without much difficulty. No information was given to the plaintiff when he was left respecting the place, or how he should find his way from it; but there was evidence that he was well acquainted with the general situation of the country in that neighborhood, and with the highways; was a stout man, in robust health, and had been a good deal addicted to hunting in that part of the country.

About the month of August, 1853, an arrangement, the terms of which were not particularly proved, was made, by which the Grand Trunk railway assumed the management of the Atlantic and St. Lawrence railroad, paying the expenses and receiving the revenues of the road, and at the time when the plaintiff was removed from the cars, as is stated above, the Atlantic and St. Lawrence railroad was managed by and in the name of the Grand Trunk railway.

For some time previous to this arrangement the defendant had been employed as a regular conductor of a passenger train by the Atlantic and St. Lawrence railroad, and he was continued in the same employment after the road was managed by the Grand Trunk railway, and was in charge of the train by virtue of such employment when he removed the plaintiff.

Evidence was introduced that before the management of the

road was assumed by the Grand Trunk railway, the rate of fares between different stations was established and duly advertised; that the same rates continued to be established and taken, down to and after the time when, &c., and that the fare so established and taken from Northumberland to North Stratford was forty cents; that a uniform deduction of five cents was made from these different rates of fare when tickets were bought at the offices, and offered in the cars, and that the largest number of passengers bought tickets, and so paid the smaller fare; and that under this regulation the price of a ticket from Northumberland to North Stratford was thirty-five cents, and the fare taken in the cars forty cents. It appeared that these rates of fare were established and advertised by order of the president of the road, but no evidence was offered to show that this was done by authority of the directors. The plaintiff objected to this evidence, that the fares were established by the corporation, but the evidence was admitted, subject to exception.

The court instructed the jury that the defendant was not justified in removing the plaintiff from the cars at the time and place, and under the circumstances appearing in this trial, though the defendant were lawful conductor of the train, and the plaintiff unreasonably refused to pay the regular and legal fare; and that the plaintiff, as matter of law, was entitled to a verdict.

The court further instructed the jury, that if the defendant was appointed conductor by the Atlantic and St. Lawrence railroad, and continued regularly in that employment after the Grand Trunk railway assumed control, he would, notwithstanding any such arrangement with the Grand Trunk road, be a conductor of the Atlantic and St. Lawrence road, subject to the laws of this State as such, and clothed with the powers of a legal conductor: that if they found the rates of fare on the road to have been duly established and advertised by the Atlantic and St. Lawrence railroad, and the same rates and notices continued under the management of the Grand Trunk road; that the fares so established differed from the regular prices of tickets, the tickets being uniformly five cents less, and that the

regular fare paid in the cars from Northumberland to North Stratford was forty cents, and the price of a ticket for the same passage was thirty-five cents, and the defendant ought to have paid the fare of forty cents, unless he was prevented from obtaining a ticket because the ticket office was not open at suitable times, or from some other default of the road; and that if the defendant refused to pay the regular fare when he was so bound to pay it, the conductor might lawfully remove him from the cars in a proper manner, at a proper place, and under proper circumstances; and that if the plaintiff was in default by refusing to pay the legal fare, damages should be given for any abuse of his authority of which the defendant was guilty. The jury returned a verdict for the plaintiff of one hundred dollars, which the defendant moves to set aside.

*Burns* and *Fletcher*, for the defendant.

The case finds that the plaintiff took a seat in the cars at Northumberland to go to North Stratford; that he was not provided with a ticket, and utterly refused to pay the stated and accustomed fare, and for that reason was removed from the cars.

The brief statement alleges that the plaintiff was removed gently, and without force, at a suitable time and place, and under proper and suitable circumstances, and the only question in the case is this, who is to judge of these matters, the court or the jury; or, in other words, is it a question of law or fact whether the plaintiff was removed from the car at a suitable time and place, and under proper and suitable circumstances.

It was well said by the learned judge who gave the opinion in *Pray* v. *Burbank*, 11 N. H. 290, " that the province of the court is limited to the determination of the competency or incompetency of the evidence to be submitted to the jury, from which they may or may not make the requisite inferences of fact, and to that extent only does the court exercise any discretion in relation to questions of fact."

" To balance evidence, weigh probabilities, determine the credibility of witnesses, or draw inferences and conclusions from circumstances proved, belong to the jury."

Hilliard v. Goold.

The truth and beauty of these sentiments are only equalled by the elegant language in which they are recorded. They will be cited (as they already have been) by succeeding jurists, as marking out and defining, most clearly and distinctly, the prerogatives of the court and jury.

No person shall be allowed to pass over the road without paying the established fare. Comp. Stat. 354, sec. 63.

It shall be the duty of the conductor to collect the tickets of all passengers, or require the established fare to be paid. Ibid., sec. 64.

In case of refusal or neglect to pay such fares, it shall be lawful for the conductor to use such force as may be necessary to remove such person from the train, and can call assistance. Ibid., sec. 64.

And any conductor who shall knowingly violate the provisions of this act relative to the sale of tickets or the collection of fares, as thus established, shall be liable to a fine of not less than one or more than ten dollars. Ibid., sec. 64.

It is a maxim of law that no man shall take advantage of his own wrong.

In this case the plaintiff did not provide himself with a ticket, and utterly refused to pay his fare, and the conductor gently removed him from the car, as he was bound by the law of the State to do, or be subjected to a penalty, and the plaintiff, under the ruling, recovered one hundred dollars damages.

The act complained of was occasioned, then, by the wrongful act and gross neglect of the plaintiff in not procuring a ticket, and taking and retaining his seat, and refusing to pay his fare. To suffer the plaintiff to recover under such circumstances would violate the time-honored maxim above cited, and work a serious injury on the defendant.

Two cases only have fallen under our notice where persons were removed from the cars. In both of these the plaintiffs had paid the fare, were removed from the cars between stations, and could not recover. One refused to give up his ticket, and the other did not, or would not, show it to the conductor. *Wil-*

---
---

letts v. *The Buffalo and Rochester R. R. Co.*, 14 Barb. 585;
*Loring* v. *Aborn*, Vol. 2, No. 1, Livingston's Law Mag.,
reported in note 1, page 503; Angell on Law of Carriers.

*Benton*, for the plaintiff.

I. The defendant having expelled the plaintiff from the cars
in the night, in the severest winter weather, away from any in-
habitants or highway, with no way of escape except over the
railway track, exposed to death from cold or another train of
cars, the court we think instructed the jury correctly that the de-
fendant was liable. If from such a state of facts the liability of
a party is not fixed by law, then it is evident no definite rule can
be established, but the rights and safety of the public must de-
pend upon the uncertain and ever-varying opinion of the jury in
each particular case. The court and not the jury should estab-
lish the law.

II. Railroad corporations are delegated with all their powers
and privileges, and have no authority to transfer those powers to
another corporation, to be exercised in their own name, much less
to one not recognized by the State, and within its jurisdiction.

Therefore the Grand Trunk Railway Company of Canada,
having no legal existence here, could not control this road, or es-
tablish legal rates of fare; and the defendant, acting under
their control, could not exercise those powers with which our rail-
road corporations are invested.

III. Every railroad corporation in this State should establish
from time to time their rates of fare, and the rates thus estab-
lished for passengers shall be the same for all persons. Comp.
Stat., chap. 150, sec. 62. In this case none were proved to
have been established by any corporation — were only posted as
directed by the president, acting as such for the Canada corpo-
ration.

*Flint & Bryant*, for the plaintiff.

1. The conductor had no right to remove the plaintiff from the
train without first complying with the provisions of our statute
laws. Comp. Stat., chap. 150, secs. 62, 63 and 64.

The law requires that the fare should be established by the corporation. The president had no authority to establish rates of fare. The rates of fare not having been established and published according to law, the defendant had no authority to put the plaintiff from the train. Therefore there was no justification, and the court did not err in directing a verdict for the plaintiff.

2. The road was managed by the Grand Trunk railway of Canada, and although the case finds that the defendant was in the employment of the Atlantic and St. Lawrence Railroad, this can make no difference. The road itself was managed entirely by a foreign corporation. All the agents, employees, conductors, and masters on the whole road were under the control and direction of the Grand Trunk Railway. The defendant must have been the conductor of the Grand Trunk Railway company. He received his pay from this company. What the defendant did he did as the agent of the Grand Trunk Railway. The Atlantic and St. Lawrence railroad did not manage the road or control the defendant, and he cannot justify his act as being done by virtue of authority given by law to this corporation, for it was not done by this corporation. And the powers and privileges granted to the railroad corporations of this State, by our laws, must be exercised by each road for itself, within its own proper limits, and cannot be assigned or delegated, certainly not to a foreign corporation.

3. The defendant had no authority or right to put the plaintiff from the cars at the time and place, and under the circumstances of this case, even if he might have done it at all.

This power must be exercised in a reasonable way. It would be unreasonable and unsafe to allow a conductor to put passengers out of the cars between stations. If the companies should deem this rule too severe upon them, they may require the passenger to pay his fare before the train starts. How can it be reasonable, after all have been called aboard with their baggage, and proceeded two or three miles on their way, to put a man, woman or child out of the car into a bed of snow, in a cold winter night, in the woods, and away from a road or shelter? The law would not allow this, because it would not allow a conductor to murder

a passenger in cold blood because he happened to be obstinate, or foolish, or destitute of money.

If, then, he could not put a feeble woman or child from the car under these circumstances, how smart and robust must the passenger be ? how dark or light must it be ? how far from a highway and a house ? in snow how deep, and weather how cold ? and with baggage how much, may the conductor eject his passenger after he has carried him from one station, and before he reaches another ?  The only safe rule is not to permit it at all.

4. The facts being proved, as they were in this case, whether the defendant exercised his authority in a reasonable and legal way or not, is a question of law, and the court held correctly, that, as a matter of law, there was no justification for removing the plaintiff from the train " at the time and place and under the circumstances appearing in this trial."

The plaintiff was thrown from the cars in a dark, cold, winter night, on to the embankment, or off of it, and which does not appear, in the snow, and with no other way to the road or a shelter broken through the snow, but the dangerous track of the railroad through a long and exceedingly deep cut in the earth, in which, after traveling sixty rods, and hunting in the dark, if he happened to find a foothold and was able to climb up the bank to the highway, he might seek for lodgings ; but if he failed to find this footpath he might wander on the track all night, or perish with the cold, or be run over by a freight train.

The managers of railroads are held bound to exercise the most exact care and diligence for the safety and protection of passengers, and the safety of the community imperiously demands that our courts should rigidly enforce this rule ; the relaxation of which would very much tend to increase those accidents which are now so fearfully numerous and alarming.  *M'Elroy and Wife* v. *Nashua and Lowell Railroad*, 4 Cushing 400.

FOWLER, J.  The first question raised relates to the admission of the evidence as to the establishment and advertising of the rates of fare on the Atlantic and St. Lawrence Railroad.

It appeared that they were established and advertised by order of the president of the corporation, but no direct evidence was offered that this was done by the authority of the directors.

By the provisions of the statute, " every railroad corporation in this State shall establish from time to time and cause to be posted up in their depots, the rates or tariff of tolls between the several stations of such road, and between such stations and the stations of other roads with which they have a business connection for the conveyance of freight and passengers," &c. Comp. Stat. 354, sec. 62.

This power may be delegated by the corporation to suitable officers, or they may employ proper persons to promulgate and make known their action in the premises. Indeed, it is the only mode in which a corporation can exercise their powers. *Commonwealth* v. *Power & als.*, 7 Cushing 601.

The same presumptions are applicable to corporations as are continually made in relation to private persons. Persons acting publicly as officers of the corporation are to be presumed rightly in office ; acts done by the corporation which presuppose the existence of other acts to make them legally operative, are presumptive proofs of the latter. Grants and proceedings beneficial to the corporation are presumed to be accepted, and slight acts on their part which can be reasonably accounted for only upon the supposition of such acceptance, are admitted as presumptions of the fact. If officers of the corporation openly exercise a power which presupposes a delegated authority for the purpose, and other corporate acts show that the corporation must have contemplated the legal existence of such authority, the acts of such officers will be deemed rightful, and the delegated authority will be presumed. *Bank of United States* v. *Dandridge*, 12 Wheaton 64.

In this case the open and public establishment and advertising of the tariff of fare and freight by the president of the road presupposed a delegated authority from the corporation, and the acts of the corporation in receiving and appropriating the tolls thus established, recognized the existence of such authority in

him, and therefore his acts are to be deemed rightful, and to have been performed in the exercise of the proper authority delegated to him by the corporation. Moreover, his proceedings in establishing and posting the tariffs were beneficial to the corporation, and may therefore well be presumed to have been accepted and adopted by them ; for their reception and appropriation of the tolls so established, without objection, can only be reasonably accounted for upon the supposition of such acceptance. Angell & Ames on Corporations 177, 178, and authorities.

We are unable to perceive how the character of the use of the Atlantic and St. Lawrence Railroad by the Grand Trunk Railway can affect the rights or liabilities of the defendant. The case finds that the plaintiff took a seat in the cars of the Atlantic & St. Lawrence Railroad, and that the defendant was a conductor of that road, in charge of the train upon which the plaintiff took passage. Now, it seems to us wholly immaterial to the merits of the controversy between these parties, whether that road was operated by the corporation to which it originally belonged, at their own expense, or by some other corporation, or even by some private individual.

The statute makes it the duty of the conductor on each railroad to collect the tickets or require the fare to be paid, as established, and, in case of neglect or refusal to pay, authorizes him to employ the necessary force to remove the delinquent passenger from the train, and subjects him to a fine of from one to ten dollars for any omission of his duty in this behalf. Comp. Stat. 354.

We apprehend the provisions of this statute were intended to apply to every person properly acting in the capacity of conductor upon any railroad, without regard to the manner of his appointment, or the source from whence his compensation might be derived. They were designed to protect the stockholders, and through them the public, from the injurious practice of free riding, and to accomplish this purpose must be obligatory on every person rightfully in charge of any passenger train.

It would hardly be contended that a conductor upon a road

operated by the mortgage bond-holders, of which there are now several in this State, could excuse himself for violating any of the provisions of the statute, because he was in the employment, and the road on which he was employed was operated at the expense and for the benefit of the trustees of those bond-holders. Such an excuse would evidently be a clear evasion of the letter as well as the spirit of the law, and if not thus excused, then such conductor would be justified, and not only that, imperatively required, to expel from the cars any person refusing to pay the established fare, when requested.

The uniform discrimination in the established tariff of five cents in favor of those passengers who purchase tickets, over those who pay after taking seats in the cars, besides the convenience with which it is attended, is so clearly just and reasonable, and so manifestly for the interest of the railroads, in bringing into operation the only check they can have upon the honesty and fidelity of their conductors, that we think its legality is not to be doubted. It has been directly sustained by repeated decisions in other States, and we see no reason to question its propriety. Any passenger, who, having neglected or refused to purchase a ticket, shall refuse to pay the additional fare thus established, may rightfully be expelled from the cars in a proper manner.

But the principal question in this case arises upon the ruling of the judge before whom it was tried, that the defendant was not justified in putting the plaintiff out of the cars at the time and place, and in the manner disclosed by the evidence, and that consequently the plaintiff was entitled to a verdict as a matter of law, without submitting to the jury the question of the propriety or impropriety of the defendant's conduct in ejecting him from the cars under all the circumstances of the case.

The defendant's brief statement set forth that he was conductor upon the railroad, that the plaintiff was a passenger, and refused to pay the lawful and established fare, wherefore he gently and without unnecessary force removed the plaintiff from the car at a suitable time and place, and under proper and suit-

able circumstances.  If the defendant had filed a special plea instead of this brief statement, it must have resulted in an issue to the jury upon the question whether unnecessary force was used by the defendant in removing the plaintiff from the cars, at a suitable time and place, and under proper and suitable circumstances ; in other words, whether the defendant had exceeded the authority vested in him and the duty imposed upon him by the statute.  The rights of the parties and the course of the trial were not affected by the form of the pleadings.  There is no doubt the brief statement set forth a sufficient justification ; if not, that question should have been raised by a motion to reject it.  As no such motion was made, the only question upon the pleadings was simply whether the defendant had proved his justification as he had alleged it, or whether in ejecting the plaintiff he had exceeded the authority with which he was clothed ; and that surely it was for the jury and not the court to pass upon. It was a pure question of fact, such as it is peculiarly the province of a jury to decide.

To balance evidence, weigh probabilities, determine the credibility of witnesses, and draw inferences and conclusions from circumstances proved, belong to the jury.  The province of the court is limited to the determination of the competency or incompetency of the evidence, from which the jury may or may not make the requisite inferences of fact.  *Pray* v. *Burbank,* 11 N. H. 290.

If the court assume the truth of facts, or, what is the same thing, that a certain result is established by them, without submitting them to the jury, and peremptorily instruct the jury that upon those facts the plaintiff is entitled to recover, it is error. *Duvall* v. *Farmers' Bank,* 7 Gill & Johnson 44 ; *Ragan* v. *Gaither,* 11 Gill & Johnson 472.

In the present case the court seem not only to have assumed that the facts proved were true, but that they established a certain conclusion, to wit, that the defendant had exceeded the authority vested in him, under the circumstances disclosed.  This seems to have been clearly wrong.

In trespass for assault and battery, violence can be justified where the safety of the defendant's person was endangered by the plaintiff's own assault. But every assault will not justify a battery, and it is *matter of evidence* whether the assault was proportionate to the battery. 1 Stephens' Nisi Prius 216 ; *Cockcroft* v. *Smith*, 2 Salk. 642 ; *Dance* v. *Lucy*, 1 Sid. 246.

If the plaintiff's own assault be pleaded, and the *evidence* will establish that the defendant's battery was *excessive*, the plaintiff may, under *de injuria*, and without a special replication or new assignment, give in *evidence* the excess. 1 Chitty's Plead. 627 ; *Curtis* v. *Carson*, 2 N. H. 539.

So, also, where the plea is *moderate castigavit*. *Hannen* v. *Edes*, 15 Mass. 347, or, *molliter manus imposuit*. *Bennett* v. *Appleton*, 25 Wendell 371.

Under the plea of moderate chastisement, the defendant must produce *evidence* of misbehavior on the part of the plaintiff, sufficient to justify the correction given, and show by evidence that the correction was reasonable and moderate. 2 Greenl. Ev., sec. 97 ; 1 Saunders' Pl. & Ev. 107, and authorities.

So, under the plea of *molliter manus imposuit*, it must appear by *evidence* that no more force was employed than the exigency reasonably demanded. 2 Greenl. Ev., sec. 98.

In all these cases the question is for the jury to determine. In *Imason* v. *Cope*, 5 C. & P. 193, which was trespass for an assault and battery by the defendant, who was one of the marshals of London, and undertook to justify on the ground that it was his duty to keep clear the passage which the plaintiff at the time of the assault was obstructing, *Tindal*, C. J., in summing up to the jury, remarked : " If the defendant was at the time acting in the performance of his duty, undoubtedly any act he did, in the fair execution of that duty, might have been justified by him on the present occasion. The question you have to consider is, whether the course he took with respect to this plaintiff was not an excess of the duty he had to perform, and of the authority he then bore with him. Because, if it was, you are then bound to give the plaintiff a fair compensation in damages

for any injury occasioned in that manner. Undoubtedly the defendant would be justified in using a moderate degree of pressure to remove a person opposing those for whom he was bound in the discharge of his duty to make a passage. Or, if any resistance occurred, then a more violent degree of pressure might be used. But it does not appear that any resistance was offered, beyond what the necessity of the case rendered absolutely necessary. Therefore, you have to say whether a blow which appears to have been struck instantly, without any attempt to remove the plaintiff by other means, was or was not an excess of the authority which the defendant exercised at the moment."

This case, as presented in the evidence and summed up by the learned chief justice, would seem to have presented a much stronger occasion for the instructions now under consideration, than the one before us ; yet the question of the excess of authority was distinctly submitted to the jury, although the result could not have been doubtful.

In *Eyre* v. *Noisworthy*, 4 C. & P. 502, which was trespass brought by a waterman who had wrongfully attached his boat to the defendant's ship by a rope, against the captain of the ship, who had thrown a stone against him to make him let go the rope, the defendant filed two special pleas, justifying the throwing of the stone, as absolutely necessary to cause the boat to be cut off, and because the object could be effected in no other mode. The same learned chief justice, in closing his charge to the jury, said, " The points for your consideration are these : First, are you satisfied, that, in its natural and necessary consequence, the throwing of a stone tends to loosen and disannex a rope ? If you are not, then you will find for the plaintiff. And, secondly. if you think that there was any other practicable mode by which the effect could have been produced, in that case you will find your verdict for the plaintiff."

So also in *Sampson* v. *Smith*, 15 Mass. 366, where the jury were instructed that if they believed from the evidence the punishment inflicted by a shipmaster was cruel and vindictive, they should find for the plaintiff, although he had rendered himself

liable to punishment, which the defendant had the right to inflict. The true rule on this subject, to be deduced from all the authorities, would seem to be, that whenever the justification of any act, alleged to be wrongful and injurious, is based on the exercise of authority, whether that authority be incident to the official character and duty of the party exercising it, or arise from the misconduct of the opposite party and the necessities of the case, the question of the excess of such authority is to be determined by the jury, upon the evidence submitted for their consideration, and not by the court.

Applying this rule to the case before us, we are clearly of opinion that the jury should have been instructed to say, upon all the evidence presented before them, whether the defendant did his duty under his authority as a conductor under the statute, in ejecting the plaintiff from the cars at the time and place, and in the manner he was shown to have done it. Instead of this, as they were instructed that the plaintiff was entitled to their verdict as a matter of law, leaving only the amount of damages to be determined by them, the verdict must be set aside and a *New trial granted.*